**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE MONITORING OF GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE LOCATION DATA FOR ONE T-MOBILE CELL PHONE AND SEARCH OF INFORMATION ASSOCIATED WITH THE SAME NUMBER PURSUANT TO RULE 41 AND 18 U.S.C. § 2703 FOR INVESTIGATION OF VIOLATION OF 18 U.S.C. § 2252 | SC No. 21-sc-299<br><br>**Filed Under Seal** |

**FIRST APPLICATION FOR NONDISCLOSURE ORDER UNDER 18 U.S.C. § 2705(b) AND TO SEAL WARRANT AND RELATED DOCUMENTS**

The United States of America, by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order placing the above-captioned search warrant and the application and affidavit in support thereof, and all attachments thereto and other related materials (collectively, the "Warrant") under seal, and precluding the provider from notifying any person of the Warrant under 18 U.S.C. § 2705(b). In regard to the nondisclosure, the proposed Order would direct T-Mobile ("PROVIDER"), an electronic communication service provider and/or a remote computing service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054, not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence or content of the Warrant for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. The United States further requests that the Court's Order further provide that any notification under 18 U.S.C. § 3103 be delayed for a period of thirty (30) days after the termination of the collection of the data authorized by the Order.

**JURISDICTION**

1. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i). As discussed more fully below, various acts under investigation occurred within the District of Columbia. *See* 18 U.S.C. §3237.

**FACTUAL BACKGROUND**

2. Execution of the Warrant is part of the Government's ongoing criminal investigation into possible violations of 18 U.S.C. § 2252 (Activities Relating to Material Involving the Sexual Exploitation of Minors). Specifically, this investigation concerns a cyber tip submitted by Yahoo, Inc. at Oath Holdings, LLC (hereafter "OATH") to the National Center for Missing and Exploited Children ("NCMEC"), a non-profit 501(c)(3) organization that serves as a national clearinghouse and resource center for families, victims, private organizations, law enforcement, and the public on missing and sexually exploited children. On April 30, 2020, staff members from OATH discovered files containing suspected child pornography that had been transmitted via email using the email account "petyrmopatis@yahoo.com." OATH provided NCMEC with the account holder's name, an alternate email address, and a phone number. The alternate email address was listed as vmopatis@gmail.com, and the phone number was listed as 202-733-0969. The files were transmitted via Yahoo Mail on April 29, 2020 at 6:31am (UTC) using IP address 108.31.72.59. Yahoo forwarded the media files and this information to NCMEC on April 30, 2020. NCMEC issued CT Report Number 71305775 and forwarded the information to the Northern Virginia Regional Internet Crimes Against Children Task Force (hereinafter the "Task Force") for further investigation.

3. The Task Force served OATH with an administrative subpoena, requesting the subscriber information and IP logs for the account petyrmopatis@yahoo.com. Pursuant to this subpoena, OATH provided the following information: "Petyr Mopatis" was the listed account holder, with the alternate email address vmopatis@gmail.com, and the associated phone number 202-733-0969. The account status was listed as "suspended," and the most recent IP login provided, dated April 29, 2020, was IP address 108.31.72.59 – the same IP address that was used to send the child pornography via email.

4. NCMEC utilized an open source IP lookup tool and found that the listed IP address was associated with MCI Communications / Verizon. Pursuant to an administrative subpoena served upon Verizon by the Northern Virginia Regional ICAC Task Force, Verizon provided the following subscriber information: subscriber **DONNELL ROJAS**; address 750 Burns Street Southeast in Washington, D.C.; email address rojasdonnell@gmail.com; and phone numbers (202) 751-1226 (the **TARGET PHONE NUMBER)** and (202) 575-4499.

5. The information forwarded by NCMEC and associated with the email address petyrmopatis@yahoo.com contained a total of 42 media files that were viewed in their entirety by Yahoo prior to submitting the CT Report to NCMEC. The media files included 18 images and 24 GIF[1] files. Four of the media files had been previously identified and categorized as apparent child pornography by NCMEC, and at least one of the GIF files was identified as being part of the widely known "Daisy's Destruction" series. The affiant to the search warrant accompanying this application has viewed these files and confirmed they contain child pornography.

6. Administrative subpoenas were served upon Google for information associated with the email accounts vmopatis@gmail.com and rojasdonnell@gmail.com.

---

[1] A GIF, short for Graphical Interchange Format, is a series of images or soundless video that will loop continuously and does not require anyone to press play.

3

Vmopatis@gmail.com was the listed "alternate email" associated with petyrmopatis@yahoo.com in the original CT Report. The return for vmopatis@gmail.com listed "Varys Mopatis" as the account holder's name and provided the **TARGET PHONE NUMBER** as the recovery phone number associated with the account. The return for rojasdonnell@gmail.com listed "Donnell Rojas" as the account holder's name. The alternate and recovery email was listed as drum_line91@yahoo.com, and the recovery phone number was listed as the **TARGET PHONE NUMBER**.

7. The **TARGET PHONE NUMBER** was determined to be a T-Mobile phone number. An administrative subpoena was served upon PROVIDER for subscriber information. The customer name was listed as "Rose Butler," and the billing address was 750 Burns Street Southeast in Washington, D.C. A law enforcement database search of "Rose Butler" revealed that Rose Butler of 750 Burns Street Southeast, Washington, D.C. was born on August 12, 1932. In a prior police report, Ms. Butler was reported to be the mother of **ROJAS**'s mother, making her the maternal grandmother of **ROJAS**.

8. A law enforcement database check of **ROJAS** indicated that he had been arrested for sexually-related offenses in Fairfax, Virginia, to include indecent exposure and general sexual battery. The address listed for **ROJAS** in the Fairfax County Police report is 750 Burns Street Southeast, Washington, DC, and the **TARGET PHONE NUMBER** was listed as **ROJAS**'s cell phone number.

9. On December 23, 2020, your affiant presented a statement of facts to Magistrate Judge Zia Faruqui of the United States District Court for the District of Columbia. Magistrate Judge Faruqui reviewed the affidavit and issued the warrant to search the **TARGET PHONE NUMBER** for prospective and historical cellular site data (Case no. 20-SC-3296).

10. On December 28, 2020, a member of the FBI served the authorized search warrant on PROVIDER. Law enforcement members began to receive prospective cellular data for the **TARGET PHONE NUMBER** shortly after serving the search warrant.

11. The FBI received prospective cellular site data for the **TARGET PHONE NUMBER**. On several occasions between December 28, 2020 and January 25, 2021, the device geo-located in the proximity of the suspected residence of **ROJAS**, 750 Burns Street Southeast in Washington, DC.

12. Due to the Capitol riot that occurred on January 6, 2021, members of the investigation team on this matter have been fully assigned to investigate the alleged criminal activity that occurred during the event, including charges related to assaults on federal officers, destruction of property, and trespassing. An additional thirty days of prospective cell-site data will continue to assist investigators in conducting less-intrusive methods of surveillance of **ROJAS**, the suspected user of the device associated with the **TARGET PHONE NUMBER**, and will help ensure the device is present for seizure during the enforcement action anticipated within thirty days. As described above, the digital device associated with the **TARGET PHONE NUMBER** is believed to contain evidence of criminal conduct.

13. Accordingly, this Warrant seeks prospective cell site as well as prospective GPS for the PROVIDER account linked to **ROJAS** and the IP address used to send the child pornography via email.

## LEGAL BACKGROUND FOR NONDISCLOSURE

14. PROVIDER provides an "electronic communications service," as defined in 18 U.S.C. § 2510(15), and/or a "remote computing service," as defined in 18 U.S.C. § 2711(2). The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713, governs how PROVIDER may be compelled to supply communications and other records related to that service using a subpoena, court order, or search warrant. Specifically, Section 2703(c)(2) authorizes the Government to obtain certain basic "subscriber information" using a subpoena, Section 2703(d) allows the Government to obtain other "non-content" information using a court order, and Section 2703(a),

5

(b)(1)(A), and (c) allows the Government to obtain contents of communications, as well as non-content information and records or other information about a subscriber or customer of such service, by means of a properly-issued search warrant. *See* 18 U.S.C. § 2703(a)-(c).

15. The SCA does not set forth any obligation for providers to notify subscribers about subpoenas, court orders, or search warrants under Section 2703. However, many have voluntarily adopted policies of notifying subscribers about such legal requests. Accordingly, when necessary, Section 2705(b) of the SCA enables the Government to obtain a court order to preclude such notification. In relevant part, Section 2705(b) provides as follows:

> (b) **Preclusion of notice to subject of governmental access**. — A governmental entity acting under section 2703 . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
> (1) endangering the life or physical safety of an individual;
> (2) flight from prosecution;
> (3) destruction of or tampering with evidence;
> (4) intimidation of potential witnesses; or
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b). The United States District Court for the District of Columbia has made clear that a nondisclosure order under Section 2705(b) must be issued once the Government makes the requisite showing about potential consequences of notification:

> The explicit terms of section 2705(b) make clear that if a courts [*sic*] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate. Once the government makes the required showing under § 2705(b), the court is required to issue the non-disclosure order.

*In re Application for Order of Nondisclosure Pursuant to 18 U.S.C. § 2705(b) for Grand Jury Subpoena #GJ2014031422765*, 41 F. Supp. 3d 1, 5 (D.D.C. 2014).

16. Accordingly, this application sets forth facts showing reasonable grounds to command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court.

## LEGAL BACKGROUND FOR SEALING

17. In this matter, the Government also requests that the Warrant, this application, and the Order all be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the Warrant. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Warrant and related filings to prevent serious jeopardy to an ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Warrant. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991).

## LEGAL BACKGROUND FOR DELAYED DISCLOSURE

18. The Government is also requesting delayed disclosure of the Warrant pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3). The Court has the authority to authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed if it finds there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705 and detailed above.

**REQUEST FOR SEALING, NONDISCLOSURE, AND DELAYED NOTIFICATION**

In this matter, the United States requests that (1) the Warrant be sealed until further order of the Court; (2) PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court and (3) the Government be authorized to delay notice of the Warrant to the account holder for a period of thirty (30) days after the termination of the collection of the data authorized by the Warrant, pursuant to 18 U.S.C. § 3103a(b)(1), (2), and (3), and Federal Rule of Criminal Procedure 41(f)(3).

Such an order is appropriate because the Warrant relates to an ongoing criminal investigation that is neither public nor known to the specific subject of the investigation at issue here. Accordingly, disclosure may reveal the existence, scope, and direction of the ongoing and confidential investigation. Once alerted to this investigation, the subject and co-conspirators could be immediately prompted to flee from prosecution, destroy or conceal incriminating evidence, alter their operational tactics to avoid future detection, attempt to influence or intimidate potential witnesses, and otherwise take steps to undermine the investigation and avoid future prosecution. In particular, given that they are known to use electronic communication services – and indeed because the offenses under investigation primarily involve the use of digital media the potential subject(s) could quickly and easily destroy or encrypt digital evidence relating to their criminal activity.

Given the complex nature of the criminal activity under investigation, and also given that the criminal scheme may be ongoing, the United States anticipates that this confidential investigation may continue for the 180 days or longer.

**Nondisclosure Order.** Therefore, based on the foregoing, there are reasonable grounds to believe that disclosure of the Warrant would result in flight from prosecution, destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation. *See* 18 U.S.C. § 2705(b)(2)-(5). Accordingly, this Court should command PROVIDER not to notify any other person (except attorneys for PROVIDER for the purpose of receiving legal advice) of the existence of the Warrant for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court. Should the court-ordered nondisclosure under Section 2705(b) become no longer needed because of the closure of the investigation or arrest of the account holder, the United States will make best efforts to notify the Court promptly and seek appropriate relief.

**Sealing.** For the reasons stated above, because of such potential jeopardy to the investigation, there also exists a compelling governmental interest in confidentiality to justify the sealing the Warrant, this application, and this Order. *See Robinson*, 935 F.2d at 287-89.

**Delayed Notice**. Moreover, the same reasons set forth above justify a delay of the period in which notice is given of the acquisition of the cell site and geolocation data. Specifically, for the reasons set forth above, notification to the user of the target telephone of the Warrant may have an "adverse result" as defined in 18 U.S.C. § 2705(a)(2)(A)-(E). Accordingly, pursuant to 18 U.S.C. § 3103a(b)(1), (2), and (3), and Federal Rule of Criminal Procedure 41(f)(3), it is requested that the Court find reasonable cause to believe that providing immediate notification of the collection of the Requested Location Information may have an adverse result, and that the Court authorize notice of Requested Location Information be delayed for a period of thirty (30) days after the termination of the collection of the data authorized by the Order.[2]

---

[2] With respect to the Section 3103a(b)(2), the United States submits that this particular provision is not applicable to the instant Application, which seeks authority to collect, in real time, data from the service provider. That is, the

WHEREFORE, the United States requests that (1) the Warrant be sealed until further order of the Court; (2) PROVIDER and its employees be directed not to notify any other person of the existence or content of the Warrant (except attorneys for PROVIDER for the purpose of receiving legal advice) for a period of 180 days (commencing on the date of the proposed Order), unless the period of nondisclosure is later modified by the Court; and (3) the Government be authorized to delay notice of the Warrant for a period of thirty (30) days after the termination of the collection of the data authorized by the Warrant, pursuant to 18 U.S.C. § 3103a(b)(1), (2), and (3), and Federal Rule of Criminal Procedure 41(f)(3).

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
N.Y. Bar Number 4444188

By: /s/ *Jessica Arco*
Jessica Arco
Special Assistant United States Attorney
DC Bar Number 1035204
United States Attorney's Office
555 Fourth Street, N.W.
Washington, D.C.  20530
202-431-5198
Jessica.arco2@usdoj.gov

---

instant application does not seek a warrant for the seizure of any tangible property, wire or electronic communication, or stored wire or electronic information. The United States submits that subsection (b)(2) is geared toward what traditionally is referred to as a "sneak and peak" warrant, which by its terms would prohibit the seizure of evidence during its execution absent a finding of reasonable necessity for the seizure. Even if applicable, however, for the reasons set forth above and in the attached affidavit, there is probable cause to believe that the collection of the Requested Location Information will facilitate law enforcement efforts to locate, identify, and observe the user of the target telephone, and these circumstances constitute a "reasonable necessity" for the seizure under subsection (b)(2).